CAMPBELL, Acting Chief Judge.
Appellant/wife, Beverly Jo Lassett, n/k/a Beverly Jo Ridgdill, challenges the property distribution provisions of the second amended final judgment of dissolution. We reverse.
The parties were married for twenty-five years, and both were approximately fifty-four years old at the time of the dissolution of their marriage. It was a second marriage for both parties. The parties’ children are both adults. Appellee/hus-band, Charles G. Lassett, has a sixth grade education and the wife graduated from high school. When they married, the husband was a crane operator, and the wife was a clerk/typist.
The wife’s father was a well-known, wealthy man in LaBelle. When the parties married, they lived, pursuant to a loose rental agreement, in a home owned by the wife’s parents. In 1976, the wife’s parents gave the parties the home and they lived there until they sold it in 1985. In 1985, they built a new home on property given to them by the wife’s mother. The wife’s father died in 1982, and the wife’s mother began gifting substantial properties to the wife and her four brothers. Without detailing the various gifts and transfers the wife’s parents made to the parties over the course of their marriage, suffice it to say that virtually all their assets and nearly their entire livelihood were derived from properties and gifts obtained from the wife’s parents. The wife’s mother had an estate plan that utilized partnerships with each of her children. A realty partnership was created with the wife in 1984, known as Ridgdill Parcel No. 17 Partnership. The wife’s mother transferred forty-eight acres of real property to the partnership. The wife and her mother were the two general partners. The partnership interests were the wife’s mother — 30%, the wife alone — 38%, a “children’s trust” for the parties’ two adult children — 16%, the husband alone— 10%, and the husband and the wife jointly — 6%. It was described as a “discretionary” partnership with the wife in control and free to distribute funds virtually as she pleased. The trial court determined that the parties’ interest in the partnership’s assets was nonmarital.
In 1989, the partnership sold its real property for $726,495. Over $116,000 was paid to the partnership at closing and the balance of the sales price was to be paid in annual installments of $88,499.50 for ten years. The wife managed the partnership monies. The wife’s mother received the annual installments from the purchase and turned them over to the wife. Approximately $249,000 was paid from partnership funds to businesses operated by the husband and/or wife. A total of $235,000 in partnership funds were invested in certificates of deposit (CD’s). At the time the dissolution proceedings were initiated, two CD’s in the total amount of $120,000 were in existence. One was held in the name of the wife and the parties’ son, and the other was in the name of the wife and the parties’ daughter. The wife testified that the CD’s came from partnership funds. These CD’s were subsequently liquidated. The wife’s CPA testified that on the date of the filing of the dissolution action, the partnership owed wife’s mother and the parties’ children $273,775, and had cash available in the amount of $107,120.
In the second amended final judgment of dissolution, the trial judge declined to award alimony to either party and approved the parties’ stipulation that each would bear his or her own attorney’s fees and costs. The assets of the realty partnership established by the wife’s mother were held by the trial court to be nonmarital property. We do not disturb those findings. However, we do conclude that the trial court erred in determining that the two CD’s in the amount of $120,000 were marital assets, distributing them solely to the wife and giving the husband a credit in the amount of the CD’s against the other assets of the parties that the court found to be marital property. *474 No proof was forthcoming that the source of funds for the purchase of the CD’s came other than from the realty partnership assets. Merely because the wife or her mother may have used nonmarital partnership assets for marital purposes does not convert the remaining partnership assets into marital assets. The trial court did not have jurisdiction to adjudicate or distribute the assets or property rights of the nonparty partnership. See Minsky v. Minsky, 25 Fla. L. Weekly D1272, — So.2d-, 2000 WL 668916 (Fla. 2d DCA May 24, 2000).
The trial court likewise erred in determining that some “phantom” gold coins were marital property, in valuing them at $17,500 and distributing them to the wife as part of her share of marital assets. The wife and her mother both testified that the coins came from a collection of the wife’s father. The wife testified she used a few of the coins for jewelry purchases and gave the remainder to her children. The husband admitted that the wife had “some” gold coins that came from her father when he died. The husband last saw the coins between 1985 and 1990. The husband never knew how many coins were in the wife’s possession and admitted that he had never counted the coins but estimated their value at $30,000. The husband speculated that the wife had acquired additional coins during their marriage. There was no proof of this and no coins were produced or traced during the dissolution proceeding. Speculation, conjecture, and suspicion can neither establish the existence of the coins nor their status as marital property.
Finally, we hold the trial court erred in valuing the wife’s jewelry at $10,-000, and distributing that amount to her as part of her share of marital assets. The only testimony as to the value of the jewelry came from the husband. We conclude that his unsupported opinion as to the value of the jewelry that was not definitively described is not sufficient to warrant the distribution of that amount to the wife as part of her share of marital assets. Moreover, it appears that the value of a diamond given to her by her mother was improperly included in that estimated valuation. On remand, a more accurate valuation of the wife’s jewelry that may be properly determined to be marital assets should be obtained in order to support the distribution of the value of the jewelry to the wife as a marital asset. Our determination of the issues concerning the CD’s, the gold coins, and the wife’s jewelry makes improper the trial judge’s requirement that the wife make equalization payments of $86,064.15 to the husband. It is clear from reading the record and the final judgment that the trial judge had difficulty with the wife’s credibility. Her lack of credibility, if any, does not establish the positive proof necessary to convert non-marital assets into marital assets.
On remand, the CD’s and gold coins shall be eliminated from the parties’ marital assets and the wife’s jewelry shall be reconsidered as directed herein. With these matters being accomplished, the remaining marital assets should be equally divided between the parties. We otherwise affirm the final judgment.
Reversed and remanded with instructions.
FULMER and STRINGER, JJ., Concur.